UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DOREANOE EDWARDS,** )<br>)<br>**Plaintiff,** )<br>) **Case No.**<br>**v.** )<br>) **JURY TRIAL DEMANDED**<br>**MANDY CORPORATION** )<br>**d/b/a GEORGIA'S WILDCAT** )<br>**PAVING,** )<br>)<br>**Defendant.** )<br>)  | |

## COMPLAINT

COMES NOW Plaintiff Doreanoe Edwards ("Edwards" or "Plaintiff"), by and through undersigned counsel, and submits his Complaint against Defendant Mandy Corporation d/b/a Georgia's Wildcat Paving ("GWP" or "Defendant"), stating as follows:

### I. NATURE OF COMPLAINT

1.

This is an action by a former employee of Defendant for discrimination in violation of the Americans with Disabilities Act of 1990 as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101, et. seq. (collectively, the

"ADAAA").

## II.     JURISDICTION AND VENUE

2.

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S. Code § 12117 because this is a civil action arising under the ADAAA.

3.

Venue is proper in this district under 28 U.S.C. § 1391. Defendant resides in DeKalb County, Georgia, and is subject to the jurisdiction of this Court. All of the acts and omissions complained of herein occurred within the Northern District of Georgia.

## III.    ADMINISTRATIVE PREREQUISITES

4.

Plaintiff has met all administrative prerequisites to filing suit under the ADA. Plaintiff timely filed his charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 29, 2021 (Charge No. 410-2021-05440).

5.

Plaintiff received a right-to-sue notice from the EEOC with respect to Charge

No. 410-2021-05440 on October 18, 2022.

6.

Plaintiff timely files this Complaint within ninety days of receiving the right-to-sue notice.

### IV.   PARTIES

7.

Plaintiff resides in Conyers, Georgia, and is a former employee of Defendant.

8.

Plaintiff is and, at all times relevant hereto, was an individual with a disability within the meaning of the ADA.

9.

Plaintiff has at all relevant times suffered from physical and mental impairments that substantially limit him in one or more major life activities or major bodily functions. 42 U.S.C. §12102(1)(A).

10.

Specifically, Plaintiff has at all relevant times been diagnosed with aplastic anemia and mixed anxiety and depressive disorder.

11.

Plaintiff also satisfies the requirements for being "regarded as disabled" as

defined in the ADA at 42 U.S.C. §§12102(1) and (3) because Defendant terminated Plaintiff because of an actual or perceived physical or mental impairment.

12.

In addition, or alternatively, Plaintiff has a disability as defined in the ADA at 42 U.S.C. §12102(1)(B) in that he has a record of one or more physical impairments that substantially limit him in one or more major life activities or major bodily functions (aplastic anemia and mixed anxiety and depressive disorder).

13.

At all relevant times, Plaintiff was and is a "qualified individual" as defined by 42 U.S.C. §12111(8) of the ADA because he was able to perform the essential functions of his position with or without reasonable accommodation.

14.

Defendant is a paving company that operates in the metro Atlanta, Georgia metropolitan area.

15.

Defendant is a covered "employer" as defined under the ADA.

16.

Defendant may be served with process by delivering a copy of the summons and complaint to registered agent and CEO Georgia M. Ellis at 108 East Benson Street, Decatur, GA 30030.

V.   FACTUAL ALLEGATIONS

17.

Edwards worked for Defendant as an Industrial Engineer / Diesel Technician between July 2019 and May 2021.

18.

At all times relevant hereto, Defendant was aware of Edwards's disabilities.

19.

Due to his aplastic anemia, Edwards was forbidden from driving the company's Department of Transportation (DOT) vehicles off company premises.

20.

Defendant accommodated this limitation by having other employees drive the company DOT vehicle for work performed off-site.

21.

Edwards also had to undergo weekly chemotherapy treatments for his aplastic anemia at the Veterans Affairs (VA) hospital, and Defendant provided

accommodations in the form of time off for his appointments.

22.

Defendant was also aware of Edwards's mental health disability.

23.

Defendant's Vice President of Production Ian Cohen, Supervisor John Miller, Supervisor Scott Dippel, and Edwards are all military service veterans, and they frequently spoke about their respective service experiences during Edwards's employment.

24.

Edwards shared with them and Defendant's President and owner, Alan Ellis ("Ellis"), on several occasions that he suffered from depression and anxiety as a result of his six years of military service.

25.

On May 11, 2021, Edwards's vehicle (his only means of transportation) broke down on the way to work and became completely inoperable.

26.

Edwards walked the remainder of the distance to work, where he then notified Dippel (Edwards's immediate supervisor) and Ellis (owner) of his car issues and explained that he would have no other form of transportation until his vehicle was

repaired.

27.

Ellis asked his office assistant to drive Edwards to O'Reilly Auto Parts to purchase a replacement component for the car, which she did.

28.

Edwards then walked back to his car and installed the new component; however, the car still did not work.

29.

Defendant's lead diesel mechanic assisted Edwards with towing his vehicle to Defendant's parking lot.

30.

After parking the vehicle, Edwards immediately notified Dippel and Ellis that the car still did not work and requested permission to take time off until he was able to have the car repaired.

31.

Ellis acknowledged that he understood and expressly excused Edwards from work until he was able to repair the car.

32.

Edwards's vehicle sat in Defendant's parking lot from 05/11/21 until

05/14/21, when Edwards acquired the necessary component and successfully repaired the vehicle.

33.

On or about May 18, 2022, Dippel told Edwards that he would be terminated for being a no-call, no-show from 5/11/22 – 5/14/22, which was false.

34.

Edwards brought the threatened termination to Ellis's attention and asked him for help to resolve the apparent misunderstanding, as he had expressly excused Edwards from work on the days in question.

35.

During his conversation with Ellis, Edwards notified Ellis that he was experiencing an anxiety episode as a result of the added stress of the threatened termination and was about to have a panic attack.

36.

Edwards was supposed to go to the hospital that day to undergo chemo treatment; however, he was unable to drive because of the panic attack.

37.

Ellis asked a coworker, Wayne Tillman, to drive Edwards to the VA hospital and told Edwards to reach back out to him later in the week to further discuss the

termination.

38.

When Edwards arrived at the VA hospital, he was admitted for psychiatric treatment and monitoring because of his anxiety attack and severe emotional distress.

39.

Upon information and belief, Tillman, who was present with Edwards at the hospital, subsequently informed Ellis of Edwards's psychiatric admission.

40.

When Plaintiff left the hospital a few days later, he reached back out to Ellis on May 21, 2021, to further discuss the threatened termination.

41.

At that time, Ellis informed Edwards that the termination would be upheld because Edwards's disability poses a direct threat to the other employees.

42.

Prior to May 21, 2021, Defendant had never mentioned anything about Edwards's disability posing an alleged threat to anyone at the company.

43.

Defendant did not perform an individualized assessment of Edwards's ability

to safely perform the essential functions of his job and did not rely on any medical judgment or objective evidence when making its determination that Edwards posed a "direct threat."

44.

Edwards does not pose a direct threat to himself or others.

45.

Indeed, Edwards's disability does not pose "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." *See* 29 C.F.R. § 1630.2(r).

46.

Defendant terminated Edwards because of his disability.

47.

Defendant's actions constitute unlawful discrimination in violation of the ADA.

48.

Edwards has suffered significant pecuniary and non-pecuniary damages as a direct result of Defendant's unlawful actions.

## COUNT I – ADA Discrimination

49.

Plaintiff incorporates by reference all of the paragraphs herein above and below.

50.

Plaintiff is and, at all times relevant hereto, was an individual with a disability within the meaning of the ADAAA. 42 U.S.C. §12102(1)(A).

51.

Plaintiff also satisfies the requirements for being "regarded as disabled" as defined in the ADAAA at 42 U.S.C. §§12102(1) and (3).

52.

In addition, or alternatively, Plaintiff has a disability as defined in the ADAAA at 42 U.S.C. §12102(1)(B) in that he has a record of a disability.

53.

At all times relevant hereto, Plaintiff was and is a "qualified individual" as defined by 42 U.S.C. §12111(8) of the ADAAA because he was able to perform the essential functions of his position with or without reasonable accommodation.

54.

At all times relevant hereto, Defendant knew of Plaintiff's disabilities/record

of disabilities.

55.

Defendant terminated Plaintiff because of his disability/record of disability/perceived disability.

56.

Defendant failed to perform an individualized assessment of Edwards's present ability to safely perform the essential functions of the job and did not rely on any medical judgment or objective evidence when making its determination that Edwards posed a "direct threat." *See* 29 C.F.R. § 1630.2(r).

57.

Defendant's termination of Plaintiff violated the ADAAA's prohibition on discrimination against qualified individuals because of an actual or perceived physical impairment.

58.

Defendant intentionally, and with reckless indifference to Plaintiff's rights, violated the ADAAA by terminating Plaintiff because of Plaintiff's actual or perceived physical impairment, despite the clear prohibition on taking adverse action against otherwise qualified individuals on that basis.

59.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

60.

In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

a) Past and future lost wages and benefits, plus interest;

b) Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, injury to credit standing, loss of health, and any other non-pecuniary losses incurred as a result of the discriminatory conduct;

c) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts;

d) All costs and reasonable attorneys' fees incurred in connection with this action; and

e) Such additional or alternative relief as the Court deems just and proper

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Date: November 14, 2022.

    Respectfully submitted,

    **BERGMAR LAW LLC**

    */s/ Nina Maja Bergmar*
    Nina Maja Bergmar, Esq.
    Georgia Bar No. 982879
    135 Auburn Ave. NE, Ste. 210
    Atlanta, GA 30303
    nmb@bergmarlaw.com
    Tel. (470) 239-2096
    Fax. (404) 806-8696

    *Attorney for Plaintiff*